**KENTUCKY BAR ASSOCIATION,**
Complainant,

v.

**Jimmy Martin HAMMOND, Movant.**

No. 96–SC–190–KB.

Supreme Court of Kentucky.

April 25, 1996.

Bruce K. Davis, Executive Director, Jay R. Garrett, Kentucky Bar Association, Frankfort, for complainant.

Jimmy Martin Hammond, Prestonsburg, Pro Se.

*OPINION AND ORDER*

This cause comes before the Court on motion of Jimmy Martin Hammond to resign from the Kentucky Bar Association under terms of disbarment. The Bar Association has responded that it has no objection.

In his official position as Floyd County Attorney, Movant was responsible for the enforcement and collection of child support obligations. To secure payment for his work in this regard, Movant was required to submit monthly employee time sheets/payroll billing reports to the Division of Child Support Enforcement for the Commonwealth of Kentucky. Movant filed false reports seeking payment for work never done by himself or members of his staff. Movant also used his authority to compel his employees to complete false time reports so that he could obtain unearned payments from the Commonwealth. As a result of this wrongdoing, Movant obtained payment of $77,341.58 from the Commonwealth of Kentucky, Department of Treasury.

During this same time, Movant was engaged in a check-kiting scheme in which he sought to defraud numerous banks in Eastern Kentucky, and obtain money from these banks under false and fraudulent pretenses. Recitation of the details is best developed in the indictment:

It was part of the scheme to defraud that the defendants engaged in what is commonly referred to as a check kiting scheme, involving an elaborate series of checks and deposits, drafted and made in a predetermined sequence, between and among the [several] banks and branches, to create the false appearance of funds that did not exist. In so doing, [Movant] relied upon the provisional credit extended to [him] by the banks, wherein the banks credited the accounts immediately upon the deposit of an uncollected check, as opposed to waiting until the funds were collected. More specifically, worthless checks drawn on one of the Jimmy Hammond account at one of the ... banks, made payable to Jimmy Hammond or "Jimmy Hammond Law Office", would be deposited in another Jimmy Hammond account at another one of the banks. Because of the provisional credit, [Movant] had immediate access to these fictitious funds, and would draw upon them by writing checks for the payment of personal

debts and obligations, thereby creating a potential overdraft that was concealed by continued check kiting.

When the banks finally took notice of the scheme and demand was made for payment of the overdrafts, Movant borrowed money from other banks to pay off these debts, under the false pretenses that the funds were to be used in payment for the costs of construction of a personal residence.

On February 22, 1996, Movant pled guilty to these crimes, filed as two counts of a nine count indictment in the United States District Court for the Eastern District of Kentucky. Pursuant to SCR 3.166, appellant was immediately suspended. He tendered his resignation from the Kentucky Bar Association on February 23, 1996, and now moves this Court to resign pursuant to SCR 3.480(3).

We note that Jimmy Martin Hammond was disbarred from the practice of law on April 14, 1981, for reasons set forth in *Kentucky Bar Association v. Hammond*, Ky., 619 S.W.2d 696 (1981). It is unfortunate that he has squandered the opportunity he was given to again practice law in this Commonwealth. His conduct, as noted herein, has again brought the bar into disrepute.

Therefore, it is ordered that Jimmy Martin Hammond's motion to resign from the Kentucky Bar Association under terms of disbarment is granted. It is further ordered that:

1. Jimmy Martin Hammond shall not be permitted to engage in the practice of law in the Commonwealth of Kentucky until such time as the Supreme Court of Kentucky enters an order reinstating his membership in the Kentucky Bar Association.

2. Jimmy Martin Hammond shall not file an application for reinstatement for a period of five (5) years from the date of this order, nor shall he seek reinstatement of his license to practice law so long as any outstanding claims or judgments arising from his misconduct, including any payments made to any client or any other entity by or on behalf of the Clients' Security Fund of the Kentucky Bar Association.

3. Any application for reinstatement shall be governed by SCR 3.520, or any subsequent amendment thereto regarding reinstatement in case of disbarment.

4. All disciplinary proceedings against Jimmy Martin Hammond shall be terminated and the costs thereof shall be paid by movant in accordance with SCR 3.450(1) and SCR 3.480(3).

5. Jimmy Martin Hammond shall, pursuant to SCR 3.390, provide notice to any clients of his inability to provide further legal services, he shall notify all courts in which he has matters pending of his resignation under terms of disbarment, and shall provide the Director of the Kentucky Bar Association copies of all such letters.

STEPHENS, C.J., and BAKER, GRAVES, KING, LAMBERT and WINTERSHEIMER, JJ., concur.

STUMBO, J., not sitting.

ENTERED: April 25, 1996.

/s/ Robert F. Stephens
Chief Justice